## BROADFOOT et al. v. UNITED STATES.

### No. 47091.

United States Court of Claims.
March 7, 1949.

William I. Denning, of Washington, D. C. (Earl C. Walck, of Washington, D. C., on the brief), for plaintiffs.

Grover C. Sherrod, of Washington, D. C., and H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and HOWELL, MADDEN, WHITAKER and LITTLETON, Judges.

JONES, Chief Judge.

Plaintiffs sue for the value of the yacht Mayflower which was requisitioned by the War Shipping Administration on July 31, 1942.

The War Shipping Administration determined that the vessel had only scrap value and that just compensation for her taking was the sum of $12,670. Plaintiffs rejected the offer of this amount and have not received any compensation therefor. They sue for $200,000.

The Mayflower was built in 1896. She was a twin-screw propelled steamship with a steel hull. Her overall length was 320 feet and 7 inches. She was owned by the Navy from 1898 to 1931.

In 1931 while the Mayflower was at dock in the Philadelphia Navy Yard fire broke out on the vessel and she was sunk to extinguish the fire. After raising the vessel the Navy decided she was not worth repairing for Navy purposes. The fire had consumed or damaged severely the vessel above the main deck. Below deck the damage was not severe, but as a result of the sinking the engines and boilers were considerably fouled with mud and water. She was sold at competitive bidding to Frank C. Parish for $16,350.

The purchaser had in mind stripping the vessel and restoring her as a palatial yacht. He did not consider her suitable for commercial operations, but planned to use her for show purposes and to exhibit her at the Chicago World's Fair as a ship of historic interest. She had been Admiral Dewey's flagship and had been the yacht of four Presidents of the United States.

It was necessary to strip the yacht and to clean and overhaul the engines. Contracts were made with Broadfoot Iron Works for the cleaning, overhauling and a part of the work of restoration. Between late November 1931 and April 1932 the machinery and engines were overhauled, and certain new installations were made. The projected work contemplated an expenditure of about $200,000. The testimony is somewhat conflicting as to the amount actually expended. We adopt the commissioner's finding that about one-half this amount was expended by April 1932, and that thereafter no further work of restoration was done.

The vessel remained moored at the Broadfoot Iron Works until 1936 at which time that company filed suit against the owners for damages in the sum of $64,-161.77, the items claimed being set out in finding 10. The case was tried and judgment rendered for $6,000. To satisfy the judgment the Mayflower was sold at public auction to the plaintiffs for $16,000 and the sale was confirmed by the court.

Thereafter the plaintiffs made repeated efforts to sell the vessel. In March 1939 they advised a broker they would consider selling for the sum of $40,000. Plaintiffs claim they had sales agreements for $60,-000 which could not be consummated because of Government limitations on export licenses.

The plaintiffs claim that at the time of the requisitioning the value of the vessel was $300,000. The defendant claims that at that time she had only a junk value of not exceeding $15,000. There was some testimony to support each position, but hardly enough to establish either.

The defendant did not requisition the vessel for scrap. After securing possession in 1942 the defendant expended $1,-200,000 in reconditioning and equipping her. Defendant claims that after such expenditure it found that the hull had been hogged

as a result of the fire in Philadelphia. By hogging is meant a bending or distortion of the hull either inward or outward. The plaintiffs claim that the hogging was caused by overloading or unbalanced loading at the Navy Yard. The evidence does not clearly establish when or where it occurred, though the physical facts would indicate that it more probably occurred at the Navy Yard.

At any rate, the cost of remedying such defect would have been about $40,000, together with an additional $160,000 to correct associated conditions. Defendant did not thereafter operate the vessel outside of sheltered waters, but used her as a training or school ship in Chesapeake Bay. She was later sold at public auction for $20,-159.99.

It is difficult to arrive at a fair valuation. Plaintiffs spent considerable sums in overhauling and replacements in 1931 and 1932 after the first purchase, but while there is some conflict in the testimony as to the condition of the vessel when requisitioned ten years later, it appears that at least some of the articles represented by the expenditure had been stripped from the yacht. The details are set out in finding 14.

In the light of all the evidence and circumstances we find that the fair and reasonable value of the vessel at the time of the taking was $30,000.

The plaintiffs are entitled to recover as just compensation the sum of $30,000, and in addition, as a part of such compensation, interest thereon at the rate of four percent per annum from July 31, 1942, to November 17, 1943, together with interest at the same rate on $20,497.50 (the amount of the judgment less three-fourth of the amount tendered) from November 17, 1943, to date of payment.

It is so ordered.

HOWELL, MADDEN, WHITAKER and LITTLETON, Judges, concur.